**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ACCELUS, INC. d/b/a THE ELIXIR GROUP,

Plaintiff,

v.

SEBELA WOMEN'S HEALTH INC.,

Defendant.

Civil Action No. 25-537-GBW

## MEMORANDUM ORDER

Pending before the Court is Defendant Sebela Women's Health Inc.'s ("Sebela" or "Defendant") Motion to Dismiss Plaintiff Accelus, Inc. d/b/a The Elixir Group's ("Accelus" or "Plaintiff") Complaint ("Motion to Dismiss") (D.I. 9), which has been fully briefed (D.I. 10; D.I. 13; D.I. 15). For the reasons discussed below, the Court denies-in-part and grants-in-part Defendant's Motion to Dismiss.

## I.    BACKGROUND

The following are properly pled factual allegations that the Court takes as true for the purpose of resolving Defendant's Motion to Dismiss.[1]

Defendant is a "U.S. pharmaceutical company that claims a market-leading position in gastroenterology and a focus on innovation in women's health." D.I. 1 ¶ 6. Plaintiff is a Contract Sales Organization ("CSO"), which is "a company that outsources sales and marketing activities for another company." *Id.* ¶ 2. "In July 2021, [Defendant] issued a Request for Proposal ('RFP')

---

[1] Under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all factual allegations in the Amended Complaint and view those facts in the light most favorable to the plaintiff. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020).

seeking CSOs to support its anticipated launch of an intrauterine device ('IUD') to be sold under the brand name MIUDELLA®." *Id.* ¶ 7. In or around February 2022, "[Defendant] selected [Plaintiff] as its CSO of choice for the launch of MIUDELLA®." *Id.* ¶ 11. "In March 2022, [Plaintiff] and [Defendant] executed a Master Service Agreement with an effective date of March 11, 2022 (the 'MSA')." *Id.* ¶ 12.

"The MSA included a Statement of Work ('SOW') that addressed the specific services [Plaintiff] was to perform in support of the anticipated 2023 launch of MIUDELLA®." *Id.* ¶ 13. The SOW "set forth a project start date of March 1, 2022 and a project end date of March 31, 2025." *Id.* ¶ 14. Pursuant to the SOW, Defendant was required to pay "monthly per head fee for recruiting and training the 103-person sales, medical, and market access teams, and direct costs including, but not limited to, a general and administrative fee and a management fee." *Id.* ¶ 15. In the event Defendant did not timely pay its fees, Defendant was required to "pay 5% of the delinquent amount as liquidated damages to cover [Plaintiff's] administrative costs, as well as an additional interest payment of 1% per month." *Id.* ¶ 16. The SOW also set forth an early termination provision stating, "[s]hould [Defendant] decide to terminate this SOW prior to the end of the contract, [Defendant] will reimburse [Plaintiff] the remainder of the Management G&A Fee not paid on a prorated basis until the end of the term." *Id.* ¶ 17. The SOW also stated, "[s]hould Miudella not be approved, [Plaintiff] agrees to waive the early termination clause and any other services not completed." *Id.*

"Between April 2022 and January 2024, [Plaintiff] performed the services set forth in the SOW." *Id.* ¶ 18. "During this period, [Defendant] informed [Plaintiff] that FDA approval of MIUDELLA® had been delayed due to questions with [Defendant's] manufacturing process." *Id.* ¶ 20. In September 2023, Defendant requested that Plaintiff terminate the three employees that

2

were hired in anticipation of, and in preparation for, the launch of MIUDELLA® due to expected further delays in FDA approval." *Id.* ¶ 21. Throughout this period, Defendant nevertheless "expressed confidence that the FDA would approve MIUDELLA®" despite the unanticipated delays. *Id.* ¶¶ 20, 21. Then, on February 12, 2024, Defendant sent Plaintiff a "February 7, 2024 Notice of Termination for Master Services Agreement and Statement of Work ('Termination Notice')." *Id.* ¶ 22. The Termination Notice stated that Defendant was terminating the MSA because it "recently received a complete response letter from the U.S. FDA indicating MIUDELLA® has not been approved." *Id.* ¶ 23. Thus, pursuant to the SOW's clause waiving the early termination clause in the event MIUDELLA® is not approved, Defendant stated that "any and all costs and fees under [the MSA] are considered waived with no remaining balance due, including but not limited to, Management G&A Fees." *Id.* Defendant "did not provide [Plaintiff] with a copy of the FDA complete response letter, claiming it was 'confidential'." *Id.* ¶ 24.

After receiving the FDA Complete Response Letter and terminating Plaintiff, Defendant continued to pursue its application for FDA approval of MIUDELLA®." *Id.* ¶ 33. The FDA approved MIUDELLA® on February 24, 2025, and Defendant issued a press release announcing MIUDELLA®'s approval the following day. *Id.* ¶¶ 34, 35.

On May 2, 2025, Plaintiff filed its Complaint against Defendant for breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment. D.I. 1. On June 30, 2025, Defendant filed this Motion to Dismiss seeking dismissal of Plaintiff's Complaint. D.I. 9.

## II.    LEGAL STANDARD

"To state a viable claim, a plaintiff must offer a short and plain statement showing that he is entitled to relief, including 'allegations plausibly suggesting (not merely consistent with)' such entitlement." *Bah v. United States*, 91 F.4th 116, 119 (3d Cir. 2024) (quoting *Bell Atl. Corp. v.*

3

*Twombly*, 550 U.S. 544, 557 (2007)). A complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The complaint must set forth enough facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A]t the motion-to-dismiss stage, the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (second alteration in original) (quoting *Iqbal*, 556 U.S. at 678-79). "In ruling on a motion to dismiss," a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[t]he primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether they are entitled to offer evidence to establish the facts alleged in the complaint." *Fenico v. City of Philadelphia*, 70 F.4th 151, 161 (3d Cir. 2023). In other words, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8.

## III.   DISCUSSION

Defendant moves to dismiss Plaintiff's Complaint, in its entirety, which asserts three causes of action: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; and (3) unjust enrichment.

Before turning to the merits of Plaintiff's claims, the Court addresses Defendant's attempt to dismiss the Complaint on the grounds that Plaintiff failed to plead its involvement in the MSA and SOW because the Complaint only names Accelus Inc., which was not a party to either contract.

4

*See* D.I. 10 at 7-8. Defendant contends that "both the MSA and SOW identify either Accelus, LLC or Elixir Group LLC as the party that entered into the CSO relationship with Sebela." *Id.* at 7. According to Defendant, "this flaw in the complaint not only impacts the inadequacy of the complaint's pleaded bases for claim, but it also calls into question the asserted basis for this Court's jurisdiction." *Id.* at 8. "As a general matter, only a party to a contract has standing to enforce a contract and sue for breach of that contract." *Rottlund Homes N.J., Inc. v. Saul, Ewing, Remick & Saul, L.L.P.*, 243 F. Supp. 2d 145, 153 (D. Del. 2003). "However, a company remains liable for its contractual 'rights or obligations' if it merely changes its name." *Loan Servs. Inc. v. NEWITY LLC*, C.A. No. 22-1255-GBW, 2023 WL 6316749, at *3 (D. Del. Sept. 28, 2023) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stauffer Chem. Co.*, No. 87C-SE-11, 1991 WL 138431, at *2 (Del. Super. July 15, 1994)). The Complaint's opening sentence states that Plaintiff was formerly known as Accelus, LLC. *See* D.I. 1 ("Plaintiff Accelus, Inc. d/b/a The Elixir Group, and formerly Accelus, LLC"). Given that a corporation's change in name does not affect its contractual rights or obligations, Defendant's contention that Plaintiff failed to plead its status as a party is unavailing. Having rejected Defendant's threshold argument, the Court now turns to each of Plaintiff's claims.

## A.    The Complaint States a Claim for Breach of Contract

Plaintiff alleges that Defendant breached the MSA and SOW "by refusing to pay the prorated Management G&A Fee due and owing to [Plaintiff] after [Defendant] terminated the SOW prior to the end of the contract period. D.I. ¶ 41. "To plead a breach of contract claim in Delaware, a plaintiff must allege the existence of a contract, a breach of that contract, and resulting damages." *Piramal Pharma Ltd. v. Blade Therapeutics, Inc.*, No. 23-1044, 2024 WL 3291666, at *2 (D. Del. May 7, 2024). Defendant contends that, in light of the plain language of the MSA and SOW, Plaintiff fails to plead that Defendant breached the MSA and SOW. D.I. 10 at 9.

5

Specifically, in February 2024, the FDA issued a Complete Response Letter to Defendant rejecting its application. *Id.* at 12. Based on the SOW provision waiving the early termination clause "[s]hould Miudella not be approved," Defendant believes the FDA's Complete Response Letter foreclosed any payment obligation for early termination of the MSA. *Id.* at 9, 12; *see also* D.I. 15 at 3 ("The FDA had indisputably not approved Miudella in its Complete Response Letter.").

The crux of the parties' dispute lies in interpretation of the phrase "[s]hould Miudella not be approved." In Defendant's view, the Complete Response Letter qualifies as non-approval for purposes of the early termination clause. D.I. 10 at 14 ("A decision by the FDA to issue a complete response[] letter thus constitutes a decision not to approve an application as submitted and, at the very least, delays any subsequent approval."). Plaintiff disagrees, reasoning that the Complete Response Letter is not a final rejection, but rather, an "interim step in the FDA review process." D.I. 13 at 17.

The Court finds that factual disputes exist that preclude dismissing Plaintiff's claim.[2] In so doing, the Court first considers whether the text of the SOW unambiguously supports Defendant's reading, and thus forecloses Plaintiff's claim as a matter of law. *IKB Int'l S.A. v. Wilmington Tr. Co.*, 774 F. App'x 719, 724 (3d Cir. 2019) (explaining that a motion to dismiss should be denied when contract provisions at issue are ambiguous). The Court finds that the text of the SOW is ambiguous. A plain reading of "should Miudella not be approved" does not specify whether non-final rejections would qualify. No phrase concerning non-final rejections is explicitly written in the provision, and it cannot be read in as the unambiguous interpretation of such. *See*

---

[2] Even though the MSA and SOW are not attached to the Complaint, the Court may still refer to them on a motion to dismiss. *See Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F. 2d 1192, 1196 (3d Cir. 1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

6

*Landtect Corp. v. State Mut. Life Assurance*, 605 F.2d 75, 80 (3d Cir.1979) ("An ambiguous contract is one capable of being understood in more senses than one; an agreement obscure in meaning through indefiniteness of expression, or having a double meaning."). Defendant's arguments to the contrary are unpersuasive. Defendant relies on the notion that a Complete Response Letter is undoubtedly a form of rejection of Defendant's product, and that it is a final determination. *See* D.I. 15 at 3-4 (citing case law referring to Complete Response Letters as denials and rejections). But, as Defendant itself mentions, a Complete Response Letter is a final determination of an FDA application *in its present form*. *See* 21 C.F.R. § 314.110 (explaining that the FDA sends a Complete Response Letter when the agency identifies deficiencies that preclude approving the application in its present form). It is not a final rejection, but rather, an interim step in the pathway to approval. *Id.* Given that the Court finds ambiguous whether the provision may cover interim decisions of non-approval, the phrase "should Miudella not be approved" cannot be read to unambiguously cover an interim Complete Response Letter, absent language in the contract to that effect.

Having found that the contract language is ambiguous, the Court turns to whether Defendant's interpretation of the SOW is "the only reasonable construction as a matter of law." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003). To that end, the Court finds that both Defendant and Plaintiff offer reasonable interpretations of the SOW. Again, the MSA and SOW do not state what level of finality of a rejection constitutes non-approval. Thus, just as Defendant reasonably construes "not be approved" to include non-final rejections, Plaintiff reasonably construes the phrase to refer only to a final rejection. Given the parties' competing reasonable interpretations of the SOW, the Court finds that a factual dispute exists and dismissal of Plaintiff's breach of contract claim is inappropriate. *See id.* at 615 ("In deciding a motion to

7

dismiss, the trial court cannot choose between two differing reasonable interpretations of ambiguous provisions."); *see also Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 61 F. Supp. 3d 391, 400 (D. Del. 2014).

For the above reasons, the Court denies Defendant's motion to dismiss Plaintiff's breach of contract claim.

### B.    The Complaint Fails to State a Claim for Breach of Implied Covenant of Good Faith and Fair Dealing

"The implied covenant of good faith and fair dealing inheres in every contract and requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009) (internal quotations omitted). To state a claim for breach of implied covenant, a plaintiff "must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Fitzgerald v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998).

Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing by relying on the FDA's Complete Response Letter to terminate the SOW. D.I. 1 ¶¶ 43-51. Plaintiff specifically alleges that Defendant "was and is fully aware that the FDA complete response letter is not a final order refusing approval of an application." *Id.* ¶ 46. Thus, Defendant "knowingly and intentionally misrepresent the force and effect of the FDA complete response letter in an effort to avoid paying the balance due to [Plaintiff] under the SOW." *Id.* ¶ 47. Defendant contends that Plaintiff's implied covenant claim fails because it rests on the "very same conduct" as Plaintiff's breach of contract claim. D.I. 10 at 16.

The Court agrees with Defendant. "The implied covenant is available only where the terms to be implied are missing from the contract; it 'cannot be invoked to override the express terms of

a contract.' Thus, if the contract at issue expressly addresses a particular matter, an implied covenant claim respecting that matter is duplicative and not viable." *Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*, No. CV 17-05, 2018 WL 2727542, at *9 (Del. Ch. June 6, 2018) (quoting *Kuroda*, 971 A.2d at 888). Plaintiff states that its claim "derives from [Defendant]'s flawed conclusion that the FDA's complete response letter constituted a non-approval of MIUDELLA® and thus, triggered the waiver of SOW's early termination clause." D.I. 13 at 16. Plaintiff's claim merely recites identical conduct to its contract claim. First, the SOW expressly addresses Plaintiff's right to the Management G&A Fee, and Plaintiff has asserted a claim against Defendant for allegedly violating that contractual right. *See* D.I. 11, Ex. B at 13. Second, Plaintiff asserts the same conduct underlying its breach of contract claim – whether Defendant properly interpreted the SOW to permit termination following the FDA's Complete Response Letter without payment of the Management G&A Fee. *See Sports Med. Rsch. & Testing Lab'y v. Labware, Inc.*, No. 24-516, 2025 WL 315352, at *2 (D. Del. Jan. 28, 2025) ("[A] plaintiff cannot assert an implied covenant claim that parrots the language of the breach claim or is based on 'exactly the same acts' or 'same conduct.'"). A claim for breach of an implied covenant cannot be used to recast a breach of contract claim as one for a breach of implied covenant. *See Shakesby v. SNC Int'l*, No. N22C-11-070, 2023 WL 8187301, at *6 (Del. Super. Ct. Nov. 27, 2023); *see also U Swirl, LLC v. U-Swirl Int'l, Inc.*, C.A. No. 24-1243-GBW, 2026 WL 1382764, at *11 (D. Del. May 18, 2026). Plaintiff's claim for breach of implied covenant of good faith and fair dealing is duplicative to its breach of contract claim and fails as a matter of law. Thus, Plaintiff's claim for breach of implied covenant of good faith and fair dealing is dismissed.

**C.     The Complaint Fails to State a Claim for Unjust Enrichment**

Plaintiff alleges that Defendant has been unjustly enriched by "continu[ing] to utilize [Plaintiff]'s strategic plans for the launch of MIUDELLA® without proper compensation to

[Plaintiff]." D.I. 1 ¶ 54. Plaintiff contends that its "claim focuses on [Defendant's] post-termination conduct when the SOW was no longer in place." D.I. 13 at 19. However, as Defendant correctly notes, "[i]t is a well-settled principle of Delaware law that a party cannot recover under a theory of unjust enrichment if a contract governs the relationship between the contesting parties that gives rise to the unjust enrichment claim." *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A. 3d 26, 28 (Del. Ch. 2012). Plaintiff's unjust enrichment claim is premised on Defendant's alleged use of Plaintiff's work product without proper compensation. *See* D.I. 13 at 20. The SOW expressly provides that all work performed pursuant to the SOW constitutes "work made for hire," that Defendant is the owner of the copyrighted materials, and that such ownership is "subject to payment to [Plaintiff] of all amounts due by [Defendant] in accordance with the SOW." D.I. 11, Ex. B at 9. Thus, Plaintiff's claim turns on whether Defendant fulfilled its contractual obligations. *See Kuroda*, 971 A.2d at 891. To the extent that Plaintiff contends that Defendant's ownership or continued use of the work product was conditioned upon such payment, that issue is governed by the SOW and is properly addressed through Plaintiff's breach of contract claim. *See* D.I. 11, Ex. B at 9. Since the SOW governs the subject matter that gives rise to Plaintiff's unjust enrichment claim, the unjust enrichment claim fails as a matter of law and, therefore, is dismissed.

## IV.    CONCLUSION

For all the foregoing reasons, the Court denies-in-part and grants-in-part Defendant's Motion to Dismiss.

\* \* \* \* \*

10

WHEREFORE, at Wilmington this 1st day of July 2026, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint (D.I. 9) is **DENIED** with respect to the breach of contract claim (Count I) and **GRANTED** with respect to the claims for breach of implied covenant of good faith and fair dealing (Count II) and unjust enrichment (Count III).

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

11